## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **Katrina Shivers**, individually, and on behalf of all others similarly situated, | CASE NO. |
| Plaintiffs, | JUDGE: |
| v. | **CLASS ACTION COMPLAINT** |
| **Rest Haven Illiana Christian Convalescent Home, Inc.**, d/b/a/ **Providence Life Services** an Illinois corporation. | **JURY DEMAND** **(Endorsed hereon)** |
| Defendant. | |

## PLAINTIFF'S CLASS ACTION COMPLAINT AND JURY DEMAND

### I.     INTRODUCTION

1.      This is a class action lawsuit brought by Plaintiff Katrina Shivers ("Plaintiff"), individually and on behalf of all others similarly situated ("Class Members") to recover unpaid wages, penalties, and attorneys' fees and costs. Defendant Rest Haven Illiana Christian Convalescent Home, Inc. ("Rest Haven") implemented an illegal policy requiring its non-exempt workers to undergo a COVID-19 screening each shift and weekly COVID-19 testing without pay. This physical and medical examination constitutes compensable time that was worked by the Plaintiff and the Class Members.

2.      This lawsuit arises under the Fair Labor Standards Act, 29 U.S.C. 201, et seq. ("FLSA"), the Illinois Minimum Wage Law, 820 ILCS 105/1, et seq. ("IMWL"), and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, et seq. ("IWPCA") for Defendants' failure to pay Plaintiffs, and other similarly situated employees, minimum wages, overtime wages, and earned wages. This case is brought as a collective action under 29 U.S.C. § 216(b). Plaintiff's consent form to act as a representative plaintiff is attached as Exhibit A.

1

I.      **JURISDICTION AND VENUE**

3.      Pursuant to 28 U.S.C. § 1331, this Court has federal-question jurisdiction over Plaintiff's FLSA claims, which arise under 29 U.S.C. § 216(b). In addition, this Court has supplemental jurisdiction over Plaintiff's state-law claims because those claims derive from the same common conduct that led to violations of the FLSA; that is, the FLSA and state law claims all derive from the same common nucleus of operative facts. 28 U.S.C. § 1367.

4.      Pursuant to 28 U.S.C. § 1391, venue is proper in this judicial district because the facts and events giving rise to Plaintiff's claims occurred in Illinois and within this judicial district.

5.      Rest Haven's conduct violates the state laws of Illinois because Rest Haven failed to pay for all hours worked by its employees and failed to pay overtime wages as required by Illinois law. *See* 820 ILCS § 105/1 *et seq*. (the Illinois Minimum Wage Law); 820 ILCS § 115/1 *et seq*. (The Illinois Wage Payment and Collection Act).

6.      Rest Haven is subject to personal jurisdiction before this Court because it has purposefully availed itself of the privileges of conducting activities in the State of Illinois and established minimum contacts sufficient to confer jurisdiction.

7.      This Court is empowered to issue a declaratory judgment and further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

II.     **PARTIES AND PERSONAL JURISDICTION**

**PARTIES**

8.      Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

9.      At all times material to the matters alleged in this Complaint, Plaintiff was an individual residing in Cook County, Illinois, and is a former employee of Rest Haven.

2

10.     At all material times, Plaintiff was a full-time employee of Rest Haven who worked as a Caregiver from approximately November 29, 2006, through approximately May 10, 2021.

11.     This case is a re-filing of Cook County Case #21-CH-03384 ("Original Complaint"), which was filed in Cook County on August 9, 2021 and voluntarily dismissed without prejudice on February 8, 2022 and should relate back accordingly.

12.     At all material times, Plaintiff was employed by Rest Haven and paid as an hourly employee.

13.     At all material times, Plaintiff was an employee of Rest Haven as defined by the IMWL § 820 105/3(d).

14.     Defendant Rest Haven Illiana Christian Convalescent Home, Inc. is an Illinois corporation, authorized to do business in the State of Illinois and doing business as "Providence Life Services."

15.     The IMWL defines "employer" as any individual, partnership, association, corporation, limited liability company, business trust, governmental or quasi-governmental body, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee, for which one or more persons are gainfully employed on some day within a calendar year. As Rest Haven hired and fired employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiff's and the Class Members' employment with Rest Haven, Rest Haven is an employer within the coverage the IMWL.

16.     At all relevant times, Rest Haven, individually and/or through an enterprise or agent, directed and exercised control over Plaintiff's and the Class Members' work and wages.

17.     At all relevant times, Plaintiff and the Class Members, in their work for Rest Haven, were engaged in commerce or the production of goods for commerce.

3

18.     At all relevant times, Plaintiff and the Class Members, in their work for Rest Haven, were employed by an enterprise engaged in commerce that had annual gross sales of at least $500,000.

19.     Rest Haven operates as Providence Life Services.

20.     Rest Haven is a company headquartered at 18601 North Creek Drive, Tinley Park, Illinois 60447.  The services Rest Haven offers include care consulting and assisted living services to its clients throughout Illinois, Indiana and Michigan.

21.     The "Collective Members" are all current and former hourly paid employees of Rest Haven who underwent a COVID-19 screening during at least one week in the three-year period before the filing of the Original Complaint until final resolution of this Action.

22.     The "Class Members" are all current and former hourly paid employees of Rest Haven who underwent a COVID-19 screening during at least one week in Illinois in the three-year period before the filing of the Original Complaint until final resolution of this Action.

23.     At all material times, Rest Haven was and is legally responsible for the unlawful conduct, policies, practices, acts, and omissions as described and set forth in this Complaint, as the employer of Plaintiff and Class Members. *See* Illinois Minimum Wage Law, 820 ILCS § 105/3(c); Illinois Wage Payment and Collection Act, 820 ILCS § 115/1 *et seq*.

24.     At all material times, Plaintiff and Class Members were employees of Rest Haven within the meaning of the Illinois Minimum Wage Law and the Illinois Wage Payment and Collection Act. 820 ILCS § 105/3.

## III.     FACTS

25.     The novel Coronavirus has infected nearly 100 million Americans and caused the death of over one million Americans. (*See* https://coronavirus.jhu.edu/us-map, last visited December 16, 2022. Following the outbreak of the Coronavirus, Rest Haven implemented a

4

company-wide policy requiring each of its hourly, non-exempt employees to undergo a physical and medical examination to check for symptoms of the Coronavirus each shift. This examination was imposed by Rest Haven as a requirement to work each shift. The examination was required by Rest Haven and was necessary for each employee to perform his/her work for Rest Haven. Unfortunately, Rest Haven refused to pay for this time. Rest Haven's conduct violates Federal law and Illinois law.

26.    Plaintiff witnessed hundreds of other Rest Haven workers undergo similar Covid screening and testing off-the-clock.

## COVID-19 SCREENING

27.    As an hourly, non-exempt employee, Plaintiff was required to clock-in and clock-out each day. Unfortunately, Rest Haven did not pay for all hours that she worked. During the COVID-19 pandemic, Plaintiff was required to undergo a physical and medical examination to screen for symptoms of COVID-19 *before* clocking-in each day. This COVID-19 screening was required by Rest Haven but, unfortunately, Rest Haven did not pay any of its employees, including Plaintiff, for the time spent undergoing the COVID-19 screening and testing.

28.    Rest Haven required its employees to arrive prior to the start of their scheduled shifts. However, when employees of Rest Haven arrived, they were not allowed to clock-in for the day until they passed a physical and medical examination to screen for symptoms of COVID-19. Because they clocked in after completing the COVID-19 screenings, no Rest Haven employee was paid for the time spent in the COVID-19 screening.

29.    Prior to the start of their shifts, Rest Haven employees were required to form a line at the entrance to the facility and to stand six feet apart. Rest Haven employees were then called one- by-one to a checkpoint where the COVID-19 screening took place. Each employee whose shift was set to begin was required to undergo a temperature check and to answer questions about

5

his/her health. If the employee passed the examination, he/she was then given a mask to wear. After putting on the mask, the employee then walked to the next station, which was normally hundreds of feet away, where the employee was allowed to clock-in for the day.

30.     The amount of time it takes to wait in line, undergo the COVID-19 examination, and walk to the time clocks was approximately 10 minutes to 15 minutes on average. Once a week, the employees were required to undergo a COVID-19 test, and this took approximately 20-30 minutes on average. This amount of time could be longer depending upon the number of other Rest Haven employees in line for the COVID-19 screening and waiting at the time clocks.

31.     Plaintiff knows and is aware that other Rest Haven facilities have COVID-19 screening procedures because there were multiple notices given to Rest Haven employees indicating that COVID-19 screening and prevention practices were being instituted across Rest Haven facilities.

32.     This COVID-19 screening and testing should have been paid by Rest Haven because it constitutes compensable time worked. During this time, Plaintiff and Class Members were subject to Rest Haven's control.

33.     Plaintiff and Class and Collective Members were required to follow Rest Haven's instructions while waiting, during the COVID-19 screening, and before clocking-in for the day. Rest Haven required every employee to complete the COVID-19 screening and it was not optional. Indeed, the COVID-19 screening was required by Rest Haven and its employees were required to comply under threat of discipline, including possible termination.

34.     Additionally, Plaintiff and Class and Collective Members were confined to the premises of Rest Haven when they waited for the examinations and during the examinations.

35.     Moreover, Rest Haven compelled its employees to perform specific tasks during the examinations. They were required to answer questions, submit to have their temperature

6

taken, and wear masks.

36.     In other words, Rest Haven directed, commanded, and restrained its employees during the COVID-19 examinations and testing; prevented them from using that time effectively for their own purposes; and they remained subject to Rest Haven's control during the examinations and before clocking-in.

37.     Plaintiff and the Class and Collective Members were required to clock-in on time after completing the COVID-19 screening. If they clocked-in late, they would be disciplined. Further, after completing the COVID-19 screening, the Plaintiff and Class Members were confined to the premises of Rest Haven and were instructed to walk to the time clocks to clock-in. Again, Rest Haven directed, commanded, and restrained its employees during and after the COVID-19 examinations; prevented them from using that time effectively for their own purposes; and they remained subject to Rest Haven's control.

38.     The COVID-19 screenings were necessary to the principal work performed by the Plaintiff and Class and Collective Members and were necessary to ensure a safe workplace. The COVID-19 examinations were also undertaken on Rest Haven's premises, were controlled and required by Rest Haven, and undertaken primarily for the benefit of Rest Haven.

39.     Indeed, Rest Haven required Plaintiff and Class and Collective Members to undergo this screening for the purposes of overall safety of the patients in the Rest Haven facilities and to prevent the Plaintiff and Class and Collective Members from inadvertently and unintentionally infecting the patients. Likewise, the job duty of the Plaintiff and Class and Collective Members was to serve the patients of Rest Haven and the screening was necessary to ensure that Plaintiff and Class and Collective Members safely provide that service.

40.     The COVID-19 examinations and testing were necessary to ensure that the virus did not infect the Rest Haven facilities or patients. The examinations were also necessary to ensure that

the virus did not disrupt the work performed by Plaintiff and Class and Collective Members or affect the business operations of Rest Haven. If Rest Haven did not have the COVID-19 screening, workers could inadvertently or unintentionally bring the virus into the Rest Haven facilities causing a mass breakout of the virus infecting hundreds of other Rest Haven workers.

41.     The COVID-19 screenings were integral and indispensable to the principal activity and primary job duty performed by Plaintiff and Class and Collective Members, which was to serve and assist Rest Haven patients. The COVID-19 screenings were necessary for Plaintiff and Class and Collective Members to perform their primary job duty for Rest Haven. If Rest Haven cancelled the COVID-19 screening, the Rest Haven facilities could get contaminated with the virus, the patients could get infected, and other employees of Rest Haven could get infected. In that event, Rest Haven's business would be disrupted, and Plaintiff and Class and Collective Members would not be able to do their work. Therefore, the COVID-19 screenings and testing were necessary to ensure that Plaintiff and Class and Collective Members could do their jobs for Rest Haven.

42.     The COVID-19 screenings and testing were also integral and indispensable to the principal activity and primary job duty performed by Plaintiff and the Class and Collective Members because the COVID-19 screenings were necessary to ensure that Rest Haven workers could perform their work safely, to prevent contamination from the virus, and to keep the patients of Rest Haven safe.

43.     Thus, the COVID-19 screenings were necessary for the Plaintiff and Class and Collective Members to do their work for Rest Haven and without the screenings, their ability to do their jobs would have been compromised.  Plaintiff and the Class and Collective Members could not skip the screenings altogether without the safety or effectiveness of their principal activities being substantially impaired.  The screenings prevented the COVID-19 virus from

spreading through Rest Haven's facilities and infecting employees and products, thereby allowing Rest Haven employees to continue to work.

44.     Under these facts, the COVID-19 screenings and testing were for the benefit of Rest Haven and its patients. The COVID-19 screenings and testing allowed Rest Haven's operations to continue.  Similarly, the COVID-19 screenings and testing benefited Rest Haven's patients.

45.     The COVID-19 screenings and testing were also primarily for the benefit of Rest Haven because Rest Haven's COVID-19 screening and testing policy was intended to keep its facilities and patients as safe as possible given the circumstances of the global pandemic. Rest Haven's COVID-19 screening policy was also intended to ensure the safety of Rest Haven's workers and to ensure that Rest Haven complied with the law.   By making the workplace safe, Rest Haven increased the efficiency of Rest Haven's operations.  Moreover, having employees who are healthy and able to perform their work ensures that Rest Haven can continue to operate and earn profits.

46.     Moreover, the COVID-19 screenings and testing identified above were not incidental activities for the Plaintiff and Class and Collective Members, but instead, this time was integral and indispensable to their principal activity, was controlled by Rest Haven, was required by Rest Haven, was conducted on Rest Haven's premises, and was performed primarily for the benefit of Rest Haven and its customers. Therefore, the time spent by the Plaintiff and Class and Collective Members completing the COVID-19 screenings and testing is compensable.

47.     Under Illinois law, "hours worked" includes "all the time an employee is required to be on duty, or on the employer's premises, or at other prescribed places of work, and any additional time he or she is required or permitted to work for the employer." 56 Ill. Admin. Code § 210.110.  Rest Haven's requirement for its employees to complete a COVID-19 screening and testing prior to clocking-in each shift constitutes "hours worked" under Illinois law.

9

48.     In light of Rest Haven's conduct, Plaintiff and Class and Collective Members are owed significant unpaid wages and penalties.

49.     Plaintiff and Class and Collective Members are and were non-exempt employees.

50.     Plaintiff and Class and Collective Members are and were paid on an hourly rate basis.

51.     When they work more than forty (40) hours in a workweek, they are entitled to overtime pay.

52.     As a result of Rest Haven's company-wide policies, Plaintiff and Class and Collective Members were not paid for all time worked each day and are owed significant unpaid wages.

53.     Rest Haven's method of paying Plaintiff and Class and Collective Members in violation of Illinois law was willful and was not based on a good faith and reasonable belief that their conduct complied with the law. Rest Haven knew the requirement to pay for all time worked, but intentionally and/or recklessly chose not to do so.

## COLLECTIVE ACTION ALLEGATIONS

54.     Plaintiff and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

55.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) on her own behalf and as a representative of all current and former hourly paid employees of Rest Haven who underwent a COVID-19 screenings or testing during at least one week in the three-year period before the filing of the Original Complaint until final resolution of this Action.

56.     Rest Haven subjected all of their non-exempt employees, including Plaintiff and the Collective Members, to their policy and practice of not paying them minimum wage or overtime for all compensable time in violation of 29 U.S.C. §§ 206 and 207.

57.     Rest Haven subjected all of their non-exempt employees, including Plaintiff and the Collective Members, to their policy of requiring Plaintiff and the Collective Members to undergo COVID-19 screening and testing off-the-clock.

58.     Plaintiff's claims stated in this Complaint are essentially the same as those of the Collective Members. This action is properly maintained as a collective action because in all pertinent aspects the employment relationship of individuals similarly situated to Plaintiff is identical or substantially similar.

59.     The Collective Members perform or have performed the same or similar work as Plaintiff.

60.     Rest Haven's failure to pay minimum wage and overtime compensation required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of Plaintiff or the Collective Members.

61.     Although the exact amount of damages may vary among the Collective Members, the damages for the Collective Members can be easily calculated by a simple formula. The claims of all Collective Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by Rest Haven that caused harm to all of the Collective Members.

62.     As such, Plaintiff brings her FLSA overtime claim as a nationwide collective action on behalf of the following nationwide FLSA Collective:

> **All current and former hourly paid employees of Rest Haven who underwent a COVID-19 screening or testing and worked at least 40 hours during at least one week in the three-year period before the filing of the Original Complaint to final resolution of this Action.**

63.     Rest Haven's unlawful conduct, as described herein, is pursuant to Rest Haven's corporate policy or practice of minimizing labor costs by refusing and/or failing to properly compensate its employees according to the FLSA.

64.     Rest Haven is aware or should have been aware that federal law prohibited them from not paying Plaintiff and the Collective Members all minimum wage and overtime as detailed herein.

65.     Rest Haven's unlawful conduct has been widespread, repeated, and consistent.

66.     This action is properly brought and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b).

67.     Upon information and belief, the individuals similarly situated to Plaintiff include thousands of non-exempt employees currently and/or formerly employed by Rest Haven. Plaintiff is unable to state the precise number of similarly-situated employees because that information is solely in Rest Haven's possession, custody, or control, but it can be readily ascertained from its employment records.

68.     Notice can be provided to the Collective Members by First Class Mail to the last address known to Rest Haven, via email at the last known email address known to Rest Haven, and/or by text message to the last known telephone number known to Rest Haven.

### IV.     RULE 23 CLASS ACTION ALLEGATIONS

69.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Illinois Class, which is comprised of:

> **All current and former hourly paid employees of Rest Haven who underwent a COVID-19 screening or testing and worked at least 40 hours during at least one week in Illinois in the three-year period before the filing of the Original Complaint to final resolution of this Action.**

70.     Numerosity: The number of members in the Class is believed to exceed forty (40) and in fact, is likely to be in the thousands. This volume makes bringing the claims of each individual member of the class before this Court impracticable. Likewise, joining each individual member of the Class as a plaintiff in this action is impracticable. Furthermore, the identity of the members of the Class will be determined from Rest Haven's records, as will the compensation

12

paid to each of them. As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Class and Rest Haven.

71. <u>Typicality</u>: Plaintiff's claims are typical of the Class because like the members of the Class, Plaintiff was subject to Rest Haven's uniform policies and practices and were compensated in the same manner as others in the Class. Rest Haven failed to pay the Class Members for all overtime hours they worked. Additionally, members of the Class worked substantially more than forty (40) hours in a week as non-exempt employees. Accordingly, Plaintiff and the Class Members have been uncompensated and/or under-compensated as a result of Rest Haven's common policies and practices which failed to comply with Illinois law. As such, Plaintiffs' claims are typical of the claims of the Class. Plaintiff and all members of the Class sustained damages arising out of and caused by Rest Haven's common course of conduct in violation of law as alleged herein.

72. <u>Adequacy</u>: Plaintiff is a representative party who will fairly and adequately protect the interests of the Class because it is in her interest to effectively prosecute the claims herein alleged in order to obtain the unpaid wages and penalties required under Illinois law. Plaintiff has retained attorneys who are competent in both class actions and wage-and-hour litigation. Plaintiff does not have any interest which may be contrary to or in conflict with the claims of the Class he seeks to represent.

73. <u>Commonality</u>: Common issues of fact and law predominate over any individual questions in this matter. The common issues of fact and law include, but are not limited to:

    a. Whether Plaintiff and the Class are entitled to compensation for the time spent in the COVID-19 screenings;

    b. The amount of time spent in the COVID-19 screenings;

    c. Whether Plaintiff and the Class worked more than forty (40) hours in a

workweek;

d.  Whether Rest Haven failed to pay Plaintiff and the Class wages for all overtime hours worked;

e.  The proper measure of damages sustained by Plaintiff and the Class; and

f.  Whether Rest Haven's actions were "willful."

74.  Superiority:  A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Even in the event any member of the Class could afford to pursue individual litigation against a company the size of Rest Haven, doing so would unduly burden the court system. Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Rest Haven.

75.  A class action, by contrast, presents far fewer management difficulties and affords comprehensive supervision by a single court. By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Class Members are promoted. Additionally, class treatment in this matter will provide for judicial consistency. Notice of the pendency and any resolution of this action can be provided to the Class by mail, electronic mail, text message, print, broadcast, internet and/or multimedia publication. The identity of the members of the Illinois Class is readily identifiable from Rest Haven's records.

76.  This type of case is well-suited for class action treatment because: (1) Rest Haven's practices, policies, and/or procedures were uniform; (2) the burden is on Rest Haven to prove it properly compensated its employees including any potential exemptions that might apply; and (3) the burden is on Rest Haven to accurately record hours worked by employees. Ultimately, a class action is a superior form to resolve the Illinois claims detailed herein because of the

14

common nucleus of operative facts centered on the continued failure of Rest Haven to pay Plaintiff and the Class per applicable Illinois laws.

## VII.   CAUSES OF ACTION

### COUNT ONE: FAIR LABOR STANDARDS ACT
### OFF-THE-CLOCK WORK

77.     Plaintiff and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

78.     Rest Haven has a consistent enterprise-wide policy of requiring Plaintiff and the Collective Members to perform work while off the clock and failing and/or refusing to compensate Plaintiff and the Collective Members at one and one-half times their regular hourly rate for all the time they worked in excess of forty (40) hours.

79.     Plaintiff and the Collective Members provide health care services for Rest Haven's patients. As part of this design, Rest Haven requires Plaintiff and the Collective Members to undergo Covid testing and screening prior to their shifts.

80.     At all relative times, Plaintiff and the Collective Members have been subject to Rest Haven's policy of requiring Plaintiff and the Collective Members to undergo Covid testing and screening prior to clocking at the beginning of their shifts.

81.     As a result, Plaintiff and the Collective Members typically spend 15 minutes or more each shift that goes completely uncompensated. In all instances, Rest Haven's failure to compensate Plaintiff and the Collective Members for such time violates the minimum wage provisions of the FLSA 29 U.S.C. § 206. In all instances wherein Plaintiff and the Collective Members work in excess of forty (40) hours in a given workweek, Rest Haven's failure to compensate Plaintiff and the Collective Members for such time violates the overtime provisions of the FLSA, 29 U.S.C. § 207.

82.     Although at this stage, Plaintiff and the Collective Members are unable to state the exact amount owed for all time worked during the course of their employment, Plaintiff and the Collective Members believe that such information will become available during the course of discovery. Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

83.     Rest Haven knew that – or acted with reckless disregard as to whether – its refusal or failure to properly compensate Plaintiff and the Collective Members over the course of their employment would violate the FLSA, and Rest Haven was aware of the FLSA's minimum wage and overtime requirements. As such, Rest Haven's conduct constitutes a willful violation of the FLSA.

84.     As a result of Rest Haven's failure or refusal to pay Plaintiff and the Collective Members for all hours worked, and Rest Haven's failure or refusal to pay Plaintiff and the Collective Members one-and-one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in any given workweek, Rest Haven violated 29 U.S.C. §§ 206 and 207(a). Plaintiff and the Collective Members are therefore entitled to compensation of one and one-half times their regular rate of pay, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

## SECOND CLAIM FOR RELIEF

### Failure to Pay Overtime as Required by the Illinois Minimum Wage Law

85.     All previous paragraphs are incorporated as though fully set forth herein.

86.     The Illinois Minimum Wage Law ("IMWL") entitles covered employees to overtime compensation of not less than one and one-half (11/2) times the employee's regular rate of pay for all hours worked in excess of forty (40) in one workweek. *See* 820 Ill. Comp. Stat § 105/4a(1).

87.     Defendant is subject to the IMWL's overtime requirements because Defendant is an employer under 820 Ill. Comp. Stat § 105/3(c).

88.     During all relevant times, Plaintiff and the Class Members were covered employees entitled to the above-described IMWL protections. *See* 820 Ill. Comp. Stat. § 105/3(d).

89.     Plaintiff and the Class Members are not exempt from the IMWL.

90.     Plaintiff and the Illinois Class Members routinely worked in excess of 40 hours per week.

91.     As described in the foregoing paragraphs, Defendant's compensation policies and practices are in violation of the IMWL. *See* 820 ILCS § 115/1 et seq.

92.     Defendant's failure to pay compensation as described above has been willful and/or in bad faith.

93.     Defendant knowingly failed to compensate Plaintiff and the Class Members for all hours worked and hours worked in excess of forty (40) hours in a workweek, in violation of the IMWL. *See* 820 Ill. Comp. Stat. § 105/4a(1).

94.     Pursuant to 820 Ill. Comp. Stat. § 105/12(a), employers such as Defendant who fail to pay an employee wages in conformance with the IMWL, shall be liable to the employee for, inter cilia, unpaid wages for three years prior to the filing of the lawsuit, punitive damages in the amount of five percent (5%) per month of the amount of underpayment, and reasonable attorneys' fees and costs.

### VIII. <u>JURY DEMAND</u>

95.     Plaintiff hereby demands trial by jury on all issues.

### IX.     <u>PRAYER FOR RELIEF</u>

Plaintiff, individually and on behalf of all Class Members, prays that the Court:

1.     Certify that this action may proceed as a class action under Fed. R. Civ. P. 23;

2.      Appoint Plaintiff as Representative of the Class, and appoint her counsel as Class Counsel;

3.      Find and declare that Rest Haven's policies and/or practices described above violate Illinois law;

4.      Award all unpaid wages, liquidated damages, penalties, interest, and/or restitution to be paid by Rest Haven for the causes of action alleged herein;

5.      Award costs, and expenses, including reasonable attorneys' fees and expert fees;

6.      Award pre-judgment and post-judgment interest, as provided by law; and

7.      Order such other and further legal and equitable relief the Court deems just, necessary and proper.

Date: January 13, 2023           Respectfully submitted,

*s/ Michael L. Fradin*
Michael L. Fradin, Esq.
8 N. Court St. Suite 403
Athens, Ohio 45701
Telephone: 847-986-5889
Facsimile: 847-673-1228
Email: mike@fradinlaw.com

By: */s/ James L. Simon*
James L. Simon (pro hac vice forthcoming)
Simon Law Co.
5000 Rockside Road
Liberty Plaza – Suite 520
Independence, OH 44131
Telephone: (216) 816-8696
Email: james@simonsayspay.com