**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KATRINA SHIVERS, *individually and on behalf of all others similarly situated*, | |
| Plaintiff, | Civil Action No. 1:23-cv-00262 |
| v. | Hon. Judge Rebecca R. Pallmeyer |
| REST HAVEN ILLIANA CHRISTIAN CONVALESCENT HOME, | |
| Defendant. | |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AND APPROVAL OF SERVICE PAYMENTS, ADMINISTRATION FEES AND ATTORNEYS' FEES AND COSTS**

Now comes Plaintiff, Katrina Shivers ("Plaintiff"), individually and on behalf of all other persons similarly situated, and in support of his Motion for Final Settlement Approval and for Approval of Service Payments, Administration Fees, and Attorneys' Fees and Costs, states as follows:

**I.      Introduction and Background**

The facts and background of this case are discussed in depth in Plaintiff's *Unopposed Motion for Preliminary Approval of Class and Collective Action Settlement and Approval of Service Payments and Attorneys' Fees and Costs* which was granted by this Court on November 2, 2023 (Doc. No. 30). Since then, Optime Administration has diligently administered the settlement, which was well received. Notably, there were not any objectors to the settlement.

This settlement resolves over two years of litigation – Plaintiff filed her original complaint against Rest Haven Illiana Christian Convalescent Home ("Rest Haven" or "Defendant") in Cook County Chancery Court in August, 2021 (2021CH03884). It was only after a robust exchange of information and a voluntary dismissal of the Chancery case and then a re-filing in the Northern

1

District of Illinois, followed by an additional robust exchange of information and a settlement conference with Honorable Judge David Weisman that the parties were able to resolve this case.

The June 6, 2023 settlement conference involved in depth negotiations about the compensability of the Covid testing/screening time and about the amount of time that it took for the Covid screenings/testings. Before the settlement conference, the parties were ordered to, and so did, exchange all necessary information so that the parties understood the risks of continued litigation. However, the parties were unable to reach a resolution at the settlement conference.

The parties participated in a follow-up status conference with Magistrate Judge Weisman on June 21, 2023, and the parties reported that had yet to reach a resolution, but that settlement negotiations were ongoing. The parties participated in another follow-up status conference with Magistrate Judge Weisman on July 6, 2023. Again, the parties reported that they had yet to reach a resolution, but that settlement negotiations were ongoing. The parties were ultimately able to reach a resolution on or about July 18, 2023 and so informed the Court.

## II.    Summary of Settlement Terms

As discussed in the Motion for Preliminary Approval, The Settlement Agreement provides for a total Settlement payment of $400,000.00. (Ex. 1 at p. 4). The total Settlement Amount represents a reimbursement of roughly five minutes of unpaid COVID testing and screening time per shift across the Class and Collective. (*See* Declaration of James L. Simon, "Simon Decl." at ¶ 12, attached hereto as Exhibit 2.)

The Agreement allocates one-third of the total Settlement payment ($133,333.33) as attorneys' fees, $1,000.00 as reimbursement of costs, $7,500.00 to be paid to Plaintiff as a Service award, and no more than $21,000.00 to be paid to Optime Administration, LLC as Settlement Administrator Costs. (Ex. 1 at pp. 2-6.) The remaining $237,166.67 constitutes the Net Settlement Amount. One-third of the net Settlement Amount is allocated to the IMWL Class and two-thirds

of the net Settlement is allocated to the FLSA Collective. (*Id.* at p. 4.)

As set forth in the Agreement, the Class Members include all current and former non-exempt hourly employees of Rest Haven who work or worked at any of Defendant's facilities within the state of Illinois at any time from March 10, 2020 through July 18, 2023, and who do not timely execute and return an Opt-out Form. (Ex. 1 at p. 3.) The Collective Members include all current and former non-exempt hourly employees of Rest Haven who worked at any of Defendant's facilities, regardless of the state it is located in, at any time from March 10, 2020 through July 18, 2023, and who timely execute and return an Opt-in Consent Form. (Ex. 1 at p. 3.)

All participating Class and Collective Members will be subject to the wage-and-hour Release contained in the Agreement, and Plaintiff will be subject to a general Release. (*Id.* at pp. 13-14). In exchange, all participating Class Members, Collective Members and Plaintiff will receive a pro-rata share of the respective net Settlement Amounts which is to be calculated by dividing an individual Participating Class or Collective Member's total hours worked during the Released Claims Period by the total amount of hours worked by all Participating Class or Participating Collective Members during the Released Claims Period. (*Id.* at pp. 6-7.) None of the Settlement will revert to Defendant. The original Settlement Agreement erroneously called for any unclaimed funds at the conclusion of the Settlement Administration process to be paid State of Illinois division of unclaimed funds as a *cy pres* beneficiary. (*Id.* at p. 15.) However, recognizing that these funds would remain unclaimed, the parties agree and ask the Court to approve that any remaining funds be paid to Southeastern Ohio Legal Services, a non-profit entity providing legal aid and advocacy to reduce poverty and increase opportunity.

**III.**     **The Court Should Grant Final Approval of the Settlement**

      **A.**     **Legal Standard**

## I.    The Settlement Warrants Final Approval

The procedural and substantive standards governing final approval of a class action

settlement are well settled in Illinois. *GMAC Mortg. Corp. of Pa. v. Stapleton*, 236 Ill. App. 3d 486,

493 (1st Dist. 1992). The proposed settlement "must be fair and reasonable and in the best interest

of all those who will be affected by it." *Id*. Because a proposed settlement is the result of

compromise, "the court in approving it should not judge the legal and factual questions by the same

criteria applied in a trial on the merits, … [n]or should the court turn the settlement approval

hearing into a trial." *Id*.

"Although review of class action settlements necessarily proceeds on a case-by-case basis,

certain factors have been consistently identified as relevant to the determination of whether a

settlement is fair, reasonable and adequate." *Id*. These factors—referred to as the *Korshak* factors—

are:

> (1) The strength of the case for plaintiffs on the merits, balanced against the
> money or other relief offered in settlement; (2) the defendant's ability to pay; (3) the
> complexity, length and expense of further litigation; (4) the amount of opposition to
> the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction
> of members of the class to the settlement; (7) the opinion of competent counsel; and
> (8) the stage of proceedings and the amount of discovery completed. *Id.* (citing *City
> of Chi. v. Korshak*, 206 Ill. App. 3d 968, 971–72 (1st Dist. 1990)).  Here, examination
> of the *Korshak* factors demonstrates that the Settlement is exceedingly fair, reasonable,
> and adequate, and deserving of final approval.

### A.    The Relief Offered in the Settlement Weighs Strongly in Favor of Final Approval

The total Settlement Amount represents a reimbursement of roughly five minutes of unpaid

COVID testing and screening time per shift across the Class and Collective. (Simon Decl. at ¶ 12.) This represents roughly one-third of the amount of unpaid time that was alleged in Complaint and roughly two-thirds of the amount of unpaid time that was included in Plaintiff's initial demand. (*Id.* at ¶ 13.) This is a very good result. *Mars Steel Corp. v Cont'l Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding a settlement of 10% of the total sought adequate due to risks and costs of trial); *Viceral v. Mistras Group, Inc.*, 2016 WL 5907869, at *7-8 (N.D. Cal. Oct. 11, 2016) (in class action for owed wages, settlement payment equal to 11.6% and 5.2% of estimated value of state and federal claims is fair and reasonable in light of strength and variability of claims and risks on merits); *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) (finding that a recovery of one-third of the owed wages for class members, before deducting attorneys' fees and costs, is "well above" average).

### B. Plaintiff faced meaningful obstacles to relief

In this case, Rest Haven argued that the amount of time that may have been spent by Plaintiff and the Class and Collective Members on COVID screening and testing was at most, de minimis. (*Id.* at ¶ 16.) For testing specifically, Rest Haven argued that employees were tested on-site during shift times, potentially eliminating a large component of the claims and damages. Moreover, Rest Haven argued that the "off-the-clock" nature of Plaintiff's claims rendered it inappropriate for either class or collective treatment. (*Id.* at ¶ 17.) Had the Settlement not been reached, Plaintiff would have faced opposition to motions for class and collective certification, a motion for summary judgment based upon the de minimis defense, and motions to decertify and certified class or collective. (*Id.* at ¶ 18.) A loss for Plaintiff at any of these junctures would result in a zero recovery for the proposed Class and Collective. Moreover, had Plaintiff survived these motions, a trial of his matter would be uncertain, last several days, and likely require expensive expert testimony. (*Id.* at ¶ 19.) As such, it must be said that the Agreement is well balanced against the strength and expense of the case.

While Plaintiff believes that she possessed arguments to overcome the defenses, she recognizes has factored in the risks and delays that would necessarily accompany briefing the arguments in both the trial and appellate court. This Settlement—providing as it does excellent monetary relief, directly to the Class and Collective Members and without delay—is highly beneficial for the Class and Collective Members. When considered in light of the potential hurdles faced in obtaining recovery through continued litigation, and the delay that would entail, the relief is well deserving of this Court's approval.

### C. The Complexity, Length, and Expense of Further Litigation Weighs in Favor of Settlement.

The complexity, length, and expense of further litigation also supports final approval of the Settlement here. "As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later." *Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995). The Settlement here allows Settlement Class Members to receive immediate relief, avoiding lengthy and costly additional litigation.

Should the Parties have continued litigation, Defendant would likely have raised defenses on the merits and opposed class certification. The losing party at any of those stages would likely have appealed those determinations. And assuming that a class was ultimately certified (and that Plaintiff defeated a summary judgment motion), the case would have proceeded to a trial, where Plaintiff would have to demonstrate the time was not de minimus.

"Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). Here, continued litigation would have caused great delay and expense, without any guarantee of a recovery for the Class. Settlement allows the Parties to avoid these problems, and this *Korshak* factor thus strongly weighs in favor of approval. *See Shaun Foley, Sabon, Inc. v. Metro. Life Ins. Co.*, 2016 IL App (2d) 150236, ¶ 19.

6

**D.       The Positive Reaction to the Settlement Warrants Final Approval**

Finally, the amount of opposition to the settlement and Class Members' reaction to the

Settlement—are closely related and often examined together. *See, e.g.*, *Korshak*, 206 Ill. App. 3d at

973. Here, the Settlement Class's reaction to the Settlement has been positive and weighs strongly

in favor final approval.

As detailed above, the Court-approved Settlement Administrator diligently implemented the

Notice Plan, and the objection and exclusion deadlines have passed without a single person

objecting to the Settlement. (Gomez Decl. ¶12) That not one person has objected to the Settlement

is powerful evidence of the Class's support for the Settlement. *See McDaniel v. Qwest Commc'ns

Corp.*, No. CV 05 C 1008, 2011 WL 13257336, at *4–5 (N.D. Ill. Aug. 29, 2011) (finally approving

settlement with no objections and noting that "[a]n absence of objection is a 'rare phenomenon' and

'indicates the appropriateness of the request'") (citations omitted); *GMAC Mortg.*, 236 Ill. App. 3d

at 497 ("The fact that only 26 of 590,000 members elected to opt-out is testimony . . . that the class

believes the settlement is fair."); *Shaun Foley*, 2016 IL App (2d) 150236, ¶ 20 (affirming trial

court's finding that where opposition to class settlement was "de minimus," this fact weighed in

favor of settlement approval). These two factors thus strongly support granting final approval to the

Settlement.

**E.       There was no Collusion Here**

Where the record shows "an arms-length negotiation," there was no collusion. *Shaun Foley*,

2016 IL Ap (2d) 150236, ¶ 50; *see also Korshak*, 206 Ill. App. 3d at 973 (affirming trial court's

finding of no collusion where case "was hard fought by both counsel . . . and . . . settlement reached

after vigorously contested litigation and hard bargaining"). That is precisely what occurred here and

settlement was reached after armed length negotiations and a settlement conference with Judge

David Weisman.

It took the Parties several preliminary conversations before they agreed to explore a possible resolution with the assistance of Magistrate Judge Weisman. (Simon Decl. at ¶ 20.) Prior to the settlement conference, the parties exchanged a substantial amount of information and performed all of the analysis necessary to properly value Rest Haven's maximum exposure on Plaintiff's claims and accurately account for the risk factors discussed above. (*Id.* at ¶ 21.) At the settlement conference on June 6, 2023, the parties negotiated their positions aggressively. (*Id.* at ¶ 22.) In order for the Parties to make meaningful progress, Magistrate Judgment Weisman had to select data points which he believed were reasonable and accurately accounted for the risks to each side. (*Id.* at ¶ 23.) These proposed data points ultimately drove the parties into a range where settlement was finally possibility. (*Id.* at ¶ 24.) However, the parties were unable to reach an agreement at the settlement conference. Instead, the Parties continued their internal analyses and had several post-mediation conversations. (*Id.* at ¶ 25.) The Parties participated in a follow-up status conference with Magistrate Judge Weisman on June 21, 2023, and the Parties reported that had yet to reach a resolution, and the Parties continued their negotiations. (*Id.* at ¶ 26.) The Parties participated in another follow-up status conference with Magistrate Judge Weisman on July 6, 2023. Again, the Parties reported that they had yet to reach a resolution, but that settlement negotiations were ongoing. (*Id.* at ¶ 27.) Only after all of these efforts were the Parties ultimately able to reach a resolution on or about July 18, 2023. (*Id.* at ¶ 28.)

## II. The Proposed Service Award to Plaintiff should be Approved

The settlement agreement allocates $7,500 as a service award to Plaintiff, Katrina Shivers. Plaintiffs in class and collective action lawsuits play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. *See, e.g., Cook v. Niedert*, 142 F.3d 1004,1006 (7th Cir. 1998) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012). This is especially true

in employment litigation. *See Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.").

In examining the reasonableness of a requested service award, courts consider: (1) the actions the plaintiff has taken to protect the interests of the class, (2) the degree to which the class has benefitted from those actions, and (3) the amount of time and effort the plaintiff expended in pursuing the litigation. *Cook*, 142 F.3 at 1016; *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *16 (N.D. Ill. Feb. 28, 2012).

In this case, Plaintiff worked diligently to protect and advocate on behalf of the Class and Collective Members. Plaintiff also contributed significantly to the settlement of the case as her active role in the exchange of information detailed herein enabled to parties to determine the proper scope of settlement negotiations and his first-hand knowledge proved valuable in allowing the parties to understand the risks of litigation. (Simon Decl. ¶ 32).

The service award amount is reasonable. *See Lucas v. CITGO Petroleum Corporation,* Case No. 1:21-cv-05770, Doc. #49 (N.D. Ill., Sept. 19, 2023) (awarding $7,500 to named plaintiff); *Jordan v. GoHealth, LLC,* Case No. 1:21-cv-4736 (N.D. Ill. Jun. 21, 2022) (awarding $7,500 to named plaintiff); *Zolkos*, 2015 WL 4275540, at *3 (awarding $10,000 to each of the Named Plaintiffs); *Chesemore*, 2014 WL 4415919, at *5 (stating "[a]s for appropriate amount, district courts in the Seventh Circuit have awarded incentive fee awards ranging from $5,000 to $25,000"); *In re Sw. Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 4510997, at *11 (N.D. Ill. Aug. 26, 2013) (approving $15,000 award for two class representatives because of active participation in

9

litigation); *Mullins*, 2019 WL 275711, at *6 (approving $10,000 service award); *Arledge*, 2018 WL 5023950, at *6 (approving $10,000 service award); *Briggs*, 2016 WL 7018566, at *3(approving $12,500 in service award to two plaintiffs in FLSA settlement for a total of $25,000 in service awards); *Castillo*, 2016 WL 7451623, at *3-4 (approving $10,000 service award to four plaintiffs in FLSA settlement for a total of $40,000 in service awards); *Furman v. At Home Stores LLC*, No. 1:16-cv-081900, 2017 WL 1730995, at *3 (awarding $10,000 service award).

### III.   The Requested Attorney Fees and Costs should be Approved

The IMWL provides that recovering employees shall be entitled to all costs and reasonable attorney fees. *See* 820 ILCS 105/12. Here, the Agreement provides that Plaintiff's Counsel shall be entitled to one third of the Settlement Amount ($133,333.33) as reasonable attorney fees and costs of $1,000.00.

The percentage of fund method is appropriate here because Plaintiff's Counsel accomplished what the method incentivizes: early resolution of the case without wasteful litigation to increase lodestar hours. *See, e.g., Day v. NuCO2 Mgmt., LLC*, No. 1:18-cv-02088, 2018 WL 2473472, at *2 (N.D. Ill. May 18, 2018) (adopting percentage of fund approach based on early resolution). The common fund method is "based on the equitable notion that those who have benefitted from litigation should share in its costs." *Sutton v. Bernard*, 504 F.3d 688, 691-92 (7th Cir. 2007) (quoting *Skelton v. G.M. Corp.*, 860 F.2d 250, 252 (7th Cir. 1988)) (internal quotations omitted); *Kaplan v. Houlihan Smith & Co.*, No. 12 Civ. 5134, 2014 WL 28088801, at *3 (N.D. Ill. June 20, 20144). The Seventh Circuit strongly endorses the percentage method of computing appropriate fee awards in class action common fund cases. *In re Cont'l Ill. Sec. Litig.*, 985 F.2d 867, 868 (7thCir. 1993).

10

Courts routinely hold that one-third of a common fund is an appropriate attorneys' fees award in class action settlement, including wage and hour settlements. *See, e.g.*, *Koszyk*, 2016 WL 510916, at *32016 WL 510916, at *3 (granting request for one-third of the settlement fund for attorneys' fees plus costs) *Briggs v. PNC Fin. Servs. Grp., Inc.,* No. 1:15-CV-10447, 2016 WL 7018566, at *4 (N.D. Ill. Nov. 29, 2016) *See also Lucas v. CITGO Petroleum, supra; Jordan v. GoHealth, supra;, Castillo*, 2016 WL 7451626, at *3-4 (awarding one-third of a $3,000,000 settled fund in unpaid overtime action); *Furman*, 2017 WL 1730995, at *3-4 (awarding one-third of a $990,000 settlement in unpaid overtime action); *Briggs*, 2016 WL 5109196, at *3-4 (awarding one-third of $2,825,000 settlement fund in FLSA overtime case); *Zolkos*, 2012 WL 4275540, at *3 (awarding one-third of $3,350,000 settlement in FLSA claim); *Day*, 2018 WL 24673472, at *2-3 (awarding one-third of $900,000 settlement in FLSA matter).

In awarding attorneys' fees, courts ultimately "must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and normal rate of compensation in the market at the time." *Castillo*, 2016 WL 7451626, at *4 (citing *id*.). District courts must "undertake an analysis of the terms to which private plaintiffs and their attorneys contracted at the outset of litigation when the risk of loss still existed." *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007). They must "do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, [and] information from other cases…" *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005). Moreover, "Courts within this District have also recognized that a fee award of 33 1/3% is in fact in 'line with that which has, in previous cases, been approved…" *Steele v. GE Bank*, No. 1:08-cv-1880, 2011 WL 13266250, at *6 (N.D. Ill. May 17, 2011); *see also* 4 Robert Newberg, *Newberg on Class Action* § 14.6 (4th ed. 2002) ("[F]ee awards in class actions average one-third of the recovery[.]").

11

Here, the competence of Plaintiff's Counsel led to an efficient resolution which created a substantial benefit to the class. *See Day*, 2018 WL 2473472, at * 2 (finding one-third award of $900,000 is appropriate because Plaintiff's counsel accomplished "early resolution of the case without wasteful litigation to increase lodestar hours."). Second, the substantial benefit conferred upon the Class justifies the fee award. The settlement provides significant value to participating Class and Collective Members. At the same time, it offers Class and Collective Members who do not wish to release their claims the ability to pursue their claims elsewhere. *See Ramah v. Navajo Chapter v. Babbitt*, 50 F.Supp.2d 1091, 1103-04 (D.N.M. 1999) (absence of overly broad release supports fee award). Third, the early resolution obtained means Class and Collective members were not required to wait for years before receiving payment. *See Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2012 WL 5862749, at * 2 (S.D.N.Y. 2012) (endorsing early settlement of wage and hour class actions);*see also Day*, 2018 WL 247342, at *2 (encouraging early resolution to avoid "wasteful litigation"). Fourth, the risk of non-payment was substantial. Lastly, Plaintiff's Counsel took "on a significant degree of risk of nonpayment" in agreeing to represent Plaintiff and similarly situated employees. *Taubenfeld*, 415 F.3d at 600 (approving district court's reliance on this factor in evaluating attorney's fees). Plaintiff's Counsel represented Plaintiff on a contingency fee basis with a strong risk that they will receive no fee. *See Sutton*, 504 F.3d 688, 693-94 ("there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."); *see also Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (stating Plaintiff's Counsel "could have lost [and could still lose] everything invested").

As such, Plaintiff respectfully requests that reasonable attorney's fee of $133,333.33 and costs of $1,000.00 be approved.

**IV.    The Administration Fees Should be Approved**

On November 19, 2023, following Court approval, Optime issued a notice mailing packet via first class mail to 1,609 R23 Class Members at their last known address. The notice mailing packet contained a copy of the court approved notice and were printed in English.  Ex. 3 Gomez Decl. ¶¶'s 9, 10.  Mailing packets that were returned to Optime by the United States Postal Service (USPS) as undeliverable were promptly researched through a public records database called Delvepoint. *Id* at ¶11. If an updated address was found in the database, the mailing packet was resent via first class mail. As of January 31, 2024, 211 mailing packets were returned as undeliverable by USPS. *Id.* The addresses that were deemed undeliverable by USPS were researched through Delvepoint and 54 updated addresses were found. *Id.* The notice was resent to the 54 updated address found.

Based on the work completed by Optime, $21,000 in administrator fees is warranted.  The actual administration fees were $38,807.80, significantly higher than anticipated in the Settlement Agreement and requested here, and the Defendant has paid or has agreed to pay the additional $17,807.80 outside of the settlement.  (See Optime Invoice).  Therefore, the $21,000 contemplated in the settlement agreement be approved.  See *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 CIV. 3571, 2016 WL 5109196, at *3 (N.D. Ill. Sept. 16, 2016) approving $36,000 administrator fee. *Briggs v. PNC Fin. Servs. Grp., Inc.,* No. 1:15-CV-10447, 2016 WL 7018566, at *3 (N.D. Ill. Nov. 29, 2016) approving $20,000.00 administrator fee.

**V.    Conclusion.**

Based on the foregoing, Plaintiff requests that the Court enter the proposed Final Approval Order (Ex. 4).

RESPECTFULLY SUBMITTED this 1st day of February, 2024.

Respectfully submitted,

/s/ *James L. Simon*

James L. Simon
Simon Law Co.
11 ½ N. Franklin Street
Chagrin Falls, Ohio 44022
Phone: (216) 816-8696
Email: james@simonsayspay.com

/s/ *Michael L. Fradin*

Michael L. Fradin
The Law Offices of Michael L. Fradin
8401 Crawford Ave. Ste. 104
Skokie, IL 60076
Phone: 847-644-3425
Fax: 847-673-1228
Email: mike@fradinlaw.com

*Counsel for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2024 I electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

s/ *Michael L. Fradin*

14